Argued and submitted October 27, affirmed December 30, 2009

CITY OF SALEM,
*Plaintiff-Appellant,*

*v.*

STEPHENIE MICHAELENA LAWROW,
*Defendant-Respondent.*

Marion County Circuit Court
07C40103; A136955

225 P3d 51

Sean Brady, Assistant City Attorney, argued the cause and filed the briefs for appellant.

Kevin T. Lafky argued the cause for respondent. With him on the brief was Leslie D. Gomez.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted in Salem Municipal Court of two counts of prohibited touching. Salem Revised Code (SRC) 96.300(a). She appealed to Marion County Circuit Court for trial *de novo,* as authorized by ORS 221.359 and ORS 221.360, and moved to dismiss the charges on the ground (among others) that the code provision violates Article I, section 8, of the Oregon Constitution, the state's free expression guarantee. The court agreed and dismissed the charges. The city appeals. We affirm.

SRC 96.300 provides:

"(a)   It shall be unlawful for any person to pay a fee, or to receive a fee, directly or indirectly, for touching or offering to touch the clothed or unclothed body of another for the purpose of arousing sexual excitement in himself or any other person.

"(b)   It shall be unlawful for any person to pay a fee, or to receive a fee, directly or indirectly, for allowing another person to touch his clothed or unclothed body for the purpose of arousing sexual excitement in himself or any other person.

"(c)   It shall be unlawful for any principal, agent, or employee of a business to cause, permit, aid, or abet any violation of this section by any principal, agent, or employee of the business."

"Sexual excitement" is defined in SRC 96.050(c):

" 'Sexual excitement' means the condition of human male or female genitals or the breasts of the female when in a state of sexual stimulation, or the sensual experiences of humans engaging in or witnessing sexual conduct or nudity."

"Sexual conduct," in turn, is defined in SRC 96.050(b):

" 'Sexual conduct' means human masturbation, sexual intercourse, or any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals, in an act of apparent sexual stimulation or gratification."

Although the caption of the information under which defendant was charged refers generically to SRC 96.300, the text of the information clearly charges her with violating only subsection (a); both counts allege that she "unlawfully received a fee for touching" the body of another person, and neither accuses her of allowing another person to touch her (the prohibition in subsection (b)) or of facilitating a principal, agent, or employee of a business in touching or being touched (the prohibition in subsection (c)).

Defendant successfully argued below, and maintains in response to the city's appeal, that SRC 96.300(a) is unlawful on its face because it is impermissibly vague, because it does not prescribe a particular mental state, and because it limits free expression in violation of Article I, section 8. Because we agree with the latter contention, we do not address the others.

Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Well-settled case law establishes a set of rules for analyzing government enactments or actions that might violate Article I, section 8:

"In *State v. Robertson*, [293 Or 402, 649 P2d 569 (1982),] this court established a framework for evaluating whether a law violates Article I, section 8. First, the court recognized a distinction between laws that focus on the *content* of speech or writing and laws that focus on proscribing the pursuit or accomplishment of *forbidden results*. 293 Or at 416-17. The court reasoned that a law of the former type, a law 'written in terms directed to the substance of any "opinion" or any "subject" of communication,' violates Article I, section 8,

" 'unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach.' *Id.* at 412.

"Laws of the latter type, which focus on forbidden results, can be divided further into two categories. The first category focuses on forbidden effects, but expressly prohibits expression used to achieve those effects. * * * Such laws are analyzed for overbreadth:

" 'When the proscribed means include speech or writing, however, even a law written to focus on a forbidden effect * * * must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such "overbreadth." ' *Ibid.*

"The second kind of law also focuses on forbidden effects, but without referring to expression at all. Of that category, this court wrote:

" 'If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert (apart from a vagueness claim) that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to [A]rticle I, section 8.' *Id.* at 417."

*State v. Plowman*, 314 Or 157, 163-64, 838 P2d 558 (1992), *cert den*, 508 US 974 (1993) (emphasis in original); *see also State v. Ciancanelli*, 339 Or 282, 121 P3d 613 (2005) (reaffirming and elaborating on *Robertson* analytical method).

■■     Thus, our first task is to categorize SRC 96.300(a). If it is an ordinance that prohibits only conduct, which is to say, an ordinance that does not refer to expression at all but that might, in some circumstances, implicate expression when it is enforced—for example, a criminal trespass statute enforced against picketers—then the city prevails. Defendant challenges the ordinance as written; she asserts that the city violated the constitution when it enacted the ordinance, not as it was applied against her in the particular circumstances of this case. Such facial challenges to enactments that do not expressly implicate expression are not cognizable. *State v. Illig-Renn*, 341 Or 228, 234, 142 P3d 62 (2006). On the other hand, if the ordinance focuses on expression *per se* and not on preventing harm that might be caused by expression, then defendant wins; in *Ciancanelli*, 339 Or at 322, the Supreme Court held that even live sex shows were a form of protected expression under Article I, section 8.

■  In fact, the ordinance is neither expression-neutral nor focused on expression *per se.* The former argument would have force if the ordinance prohibited a person from receiving money for sexually touching another person for the purpose of arousing sexual excitement in *the person doing the touching or the person being touched,* and if it did not criminalize "offering" to touch. Arguably, that would be an ordinance directed against conduct, with no explicit reference to any expression, even though expression might sometimes occur in the commission of the act. As the Supreme Court noted in *City of Nyssa v. Dufloth / Smith,* 339 Or 330, 340-41 n 5, 121 P3d 639 (2005), a "city constitutionally can regulate * * * sexual contact between performers and patrons, and the fact that an individual uses speech or expression in the course of that conduct would not immunize the individual from prosecution." It is true that SRC 96.300(a) regulates sexual contact between performers and patrons and, if that were all that it did, we would be faced with an altogether different case. But regulating the participants in sexual contact is not all that the ordinance does. Rather, it prohibits sexual contact between one person and another person "*for the purpose of* arousing sexual excitement in himself or *any* other person." (Emphasis added.) By extending the prohibition to include—expressly—acts that are intended to arouse an audience or other nonparticipants, the ordinance loses its expression-neutral character. An act that is intended to arouse an audience is expression. *Ciancanelli,* 339 Or at 320-21 (statute criminalizing sex acts occurring in context of live public shows restrains free expression). Further, it criminalizes "offering" to touch, and an offer necessarily involves expression. SRC 96.300(a), then, by its terms ("arousing sexual excitement in * * * any other person"), restrains expression.

At the same time, we conclude that the ordinance is not directed at or focused on speech *per se.* That is so because the offense can be committed without the recipient of the fee engaging in any expressive conduct, as that concept is defined for purposes of Article I, section 8. Under that provision, performing sexual acts, without an audience, is pure conduct and is not considered protected expression for purposes of Article I, section 8. *Ciancanelli,* 339 Or at 323; *City of Nyssa,* 339 Or at 340-41 n 5.

SRC 96.300(a), we conclude, falls within the second category of speech laws that are described in *Robertson*: laws that focus on preventing harm, but expressly proscribe expression as one means of achieving that harm. An example is the coercion statute at issue in *Robertson*, 293 Or at 413-14. In analyzing the constitutionality of that statute, the court explained:

> "The coercion statute is written so as to focus on a forbidden effect—the effect of frightening another person into a non-obligatory and undesired course of conduct. But the statute continues by specifying that the compulsion or inducement may not be imposed in aid of a 'demand,' and by means of specified verbal warnings or threats. * * * When the proscribed means include speech or writing, however, even a law written to focus on a forbidden effect * * * must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such 'overbreadth.' "

*Id.* at 417-18. SRC 96.300(a), by similar reasoning, is written so as to focus on a forbidden harm—sexually stimulating another person for pay. That harm can occur when the stimulated person is an audience, that is, when the means of achieving the harm necessarily involves expression. The ordinance, then, must be examined for overbreadth.

That examination is not difficult. An enactment is overbroad for purposes of Article I, section 8, when "it appears to reach privileged communication." *Robertson*, 293 Or at 417-18. SRC 96.300(a) clearly does just that. Most obviously, it imposes criminal sanctions for performing live sex shows, which, under *Ciancanelli*, is privileged communication. 339 Or at 322. Less controversially, it would also impose criminal sanctions on an actor who, for pay, engages in a sexually provocative scene for the purpose of arousing the audience. Had "From Here to Eternity," for example, been filmed in Salem, Oregon, Deborah Kerr and Burt Lancaster could have been exposed to prosecution for their paid participation in the classic scene in which they embrace (that is, touch each other's clothed bodies), supine, on a beach, while waves wash over them—a scene that, a prosecutor could convincingly argue, had the purpose of "arousing" in the viewer "sexual excitement," SRC 96.300(a), that is, "the sensual experiences

of humans engaging in or witnessing sexual conduct or nudity," SRC 96.050(c). Other examples from mainstream film and stage performances are numerous and obvious. Indeed, it is difficult to imagine a playbill at the local multiplex that would not feature several films containing scenes in which a performer had received money for touching another person for the purpose, among other things, of arousing in the audience "the sensual experiences of humans engaging in or witnessing sexual contact or nudity." We conclude that the challenged ordinance reaches a significant amount of protected expression.

■       That conclusion, however, does not end our inquiry. We have the responsibility to interpret enactments, if possible, to avoid overbreadth. *Robertson*, 293 Or at 417-18, 436-37. At oral argument, it was suggested that, by merely changing the phrase "*any* other person" to "*the* other person," and removing the phrase "or offering to touch," thereby removing the explicit references to expression, we could salvage SRC 96.300(a) by transforming it into a statute that focused exclusively on regulable conduct:

> "It shall be unlawful for any person to pay a fee, or to receive a fee, directly or indirectly, for *touching the clothed or unclothed body of another person* for the purpose of arousing sexual excitement in himself or the other person."

Indeed, we could leave in the reference to "offering to touch," and, although the ordinance would still implicate expression, that expression might arguably fall within a well-settled historical exception for soliciting prostitution.

■       We conclude that such judicial surgery is not possible in this situation, for two reasons. First, nothing in the record implies that those who enacted the ordinance intended it to have the narrow focus that would result from the suggested alterations. Second, we recognize a sharp distinction between judicial interpretation, which is permissible, and redrafting, which is not. Interpretation includes choosing from among competing definitions, resolving ambiguities, or explicating the meaning of the terms in the enactment. Redrafting, on the other hand, includes completely eliminating a word, phrase, or concept that the original text clearly and intentionally includes or adding a completely new word, phrase, or

concept that it does not, contrary to ORS 174.010 (judges are "not to insert what has been omitted, or to omit what has been inserted"). Imposing the suggested changes to SRC 96.300(a), even if they would salvage its constitutionality (a conclusion that we have no occasion to decide here), would require redrafting. The ordinance is fatally overbroad and, if the city wants to narrow it, that is the city's prerogative and not ours.

Affirmed.